December 3, 1906.

————————□————————

No. 4084.

(Court of Appeal, Parish of Orleans.)

## R. R. DANCY vs. HAYWARD, VICK & CO.

1. Where a broker, without good cause, closes out a customer's contract for future delivery of a commodity, the measure of damages for the injury is the highest interme-

III

diate value between the time of such closing out and a reasonable time after the customer has had notice of the fact, and has had an opportunity to take steps to minimize his loss by replacing the contract.

2. The rule of law is that where a party can with reasonable exertions reduce a loss resulting from a breach of contract, it is his duty to do so.

3. What constitutes reasonable time is a matter to be determined according to the circumstances of each case and with reference to the means and ability of the party.

Appeal from Civil District Court, Division C.

W. S. Parkerson, for plaintiff and appellee.

McCloskey & Benedict, for defendant.

Farrar, Jonas & Kruttschnitt, for defendant and appellant.

DUFOUR, J.  The facts of this case are fully stated in suit No. 3736 of our docket in which we remanded for evidence to show what was the highest price reached by the cotton market on February 11th, 1904.

The liability of the defendant is established by our first decree and the extent of this liability is the sole question now presented.

The rule of law applicable to the unwarranted closing out of a contract for future delivery of a commodity, or to the conversion of stocks or bonds having a speculative value, is that the measure of damages for the injury is the highest intermediate price between that at the time of such closing out or conversion and that prevailing at a reasonable time after the injured party becomes aware of the fact and has had an opportunity to take steps to minimize his loss.  It is the party's duty to make reasonable exertions to reduce the loss.  129 U. S. 193—47 A. 257.

What constitutes reasonable time is a matter to be determined according to the circumstances of each case and with reference to the means and ability of the party.

Dancy's contract was sold out on February 10th at 9:15 A. M. and he was immediately made aware of the fact.  At that time he had an available credit with defendants of $265.00, cash in hand $250.00 and, within the early banking hours of that day, he could, under his own statement, have

obtained $750 more by negotiating his draft on Houston, Texas.

With this amount, he could have bought or sold one hundred bales of cotton on the basis of a ten dollar a bale margin, apparently required by all the brokers at that moment, and made an attempt to reduce his loss.

When interrogated as to his reason for not doing so, he said: "that is a question I don't care to answer."

The market was excited, but Dancy's confidence as to its future course is persistently asserted by him; his disappointment at being closed out doubtless was of a nature to delay sober thought, but, as he was an experienced speculator, it could not have taken him very long to rally from the shock and recover his business equilibrium.

Considering the above circumstances, and additionally making allowance for the time consumed in his efforts to induce defendants to further carry a contract for him, and such further time as would enable him to seek legal advice and make arrangements with other brokers, we think that the closing hour of the market on that day (Feb. 10th) was reasonable time for action on his part.

Had he acted then, his loss would have been $405.00; he cannot recover such further damages as he might have prevented.

The judgment is amended by reducing the sum of $840.00 awarded to plaintiff to the sum of $405.00, and, as amended, the judgment is affirmed, appellee to pay costs of appeal.